CLAMORGAN vs. O'FALLON & LINDELL.

Where land sold by a sheriff has been subsequently conveyed by the purchaser at the sheriff's sale, all persons claiming title under the sheriff's sale must be notified of a motion to set aside such sale. It is not sufficient to notify the purchasers from the sheriff.

## APPEAL from St. Louis Circuit Court.

CROCKETT & BRIGGS, *for Appellant, contend:*

1st. That in a sale by sheriff under execution, if property of defendant be levied upon and sold without the direction or interference of plaintiff, and the plaintiff's demand is satisfied by the sale, upon a motion afterwards by defendant to set aside the sheriff's sale for irregularity, it is not necessary to notify the plaintiff in execution of the motion. 4 Litt. Rep. 244; 4 Mon. Rep. 465, 474.

2d. That upon a motion to set aside a sheriff's sale, if the purchaser, subsequent to his purchase, has sold a portion of the land to other persons, those persons need not be notified of the motion.

3d. That the purchaser of real estate at sheriff's sale, yet remaining in possession of a portion of the land claiming title under his purchase, cannot object that his vendees of a portion of the land have not been notified of a motion to set aside the sale. January vs. Bradford, 4 Bibb. 566.

4th. That the motion to set aside the sheriff's sale is not barred by lapse of time, the sale having been made in 1826, and the motion to set it aside in 1845; that such motion may be made at any time within twenty years, and especially where the plaintiffs in the motion were under disability, as in the present case. 2 Mo. Rep. 228; 7 J. J. Marshall's Rep. 624; 7 John. Rep. 556; 4 Wend. 217; 13 John. Rep. 537; 8 Mo. Rep. 448.

5th. That the execution under which the land was sold having been against the Executors of Jacques Clamorgan, the plaintiffs in this motion, claiming under a devise from J. Clamorgan, are "*pro hac vice,*" his representatives, and are therefore not strangers to the record, in such a sense as to defeat the motion. 7 Wend. 83.

6th. That the sheriff's sale was void, and vested no title in the purchaser. Rev. Code of 1825, 367; 8 Mo. Rep. 448, 177; 7 Mo. Rep. 346; 19 Pick. 539; 6 Mon. 30; 3 Marsh. 619; 2 J. J. Marsh. 36, 68; 3 Mon. 338; 7 J. J. Marshall 624; 1 Dana 185; 3 Dana 235; 5 Dana 277; 4 Cr. 403; 18 John. 362; 6 Wend. 522; 9 Porter Rep. 679; 3 B. Mon. 363.

Geyer, Gamble & Spalding *for Appellees.*

The only point which can now be considered by the Supreme Court, as the decision below, was not upon the merits, is, whether the Circuit Court decided rightly in dismissing the motion, because the parties interested were not notified.

If a decision of the motion is of any use, it must be because it will affect the plaintiff in the execution, or the present owners of the land under the sale, or both. Neither were notified of the motion.

The appellees contend:—

That notice was necessary in this case to all the parties interested in the result of the motion, and should have been given to the plaintiff in the execution, or his representatives, and the present holders under O'Fallon & Lindell.

1 J. J. Marshall 12; Hardin 181; 1 Marsh. 423; 8 Mo. Rep. 367; 1 Wend. 101; 9 Mo. Rep. 362; Caldwell vs. Lockridge, 1 Bibb Rep. 155; 4 Wend. 217; 2 Bay 338, show that it is too late now to go into such a question. In one case in Bibb, Court would not set aside an execution after 9 years, and in the case of Bay, after 12 years.

*Statement of the case adopted by the Court, and opinion by* Napton, J.

On the 20th April, 1820, Rufus Easton recovered a judgment in the Circuit Court vs. Jacques Clamorgan's executors, for $131 debt, and $28 82-100ths damages, besides costs. On the 10th June, of the same year, he issued execution on said judgment, on which the sheriff returned that he had made by the sale of a tract of land, all the cost and interest, and one hundred and forty-three dollars two and three-fourth cents of the debt and damages. On the back of the advertisement appended to the sheriff's return, the sheriff endorsed that Peter Faysaux had purchased the land at the price of $169. No other execution issued until the 3d April, 1826, when an alias *fi. fa.* was issued, on which the clerk endorsed the credit of $143 02 3-4, made on the former execution, leaving a balance due of debt and damages $16 79 1-4. On this execution the sheriff returned, that he had levied upon the real estate described in the advertisement, a copy of which was returned with the execution; that having duly advertised the same, he sold it at public auction to John O'Fallon and Jesse G. Lindell, the highest bidders therefor, at the price of $33, which after deducting costs, satisfied the execution and left a surplus of $5 42, in the hands of the sheriff. The property levied upon is not described in the return, otherwise than by a reference to the adver-

tisement, in which the real estate is described as follows, to-wit: "A piece or parcel of land containing one arpen in front by forty arpens in depth, and bounded on the eastern end by a fence formerly made to defend the crops of the inhabitants of St. Louis against the animals or beasts; on the north by the land of Tayon; on the western end by the king's domain, or vacant land; and on the south by the highway which leads to the village of St. Charles; it being the same lot of forty arpens acquired by said Clamorgan of Gabriel Dodier, by deed bearing date Nov. 4, 1793, the boundaries as above set forth are the same as given in said deed." On the 10th August, 1826, the sheriff conveyed the said land, by the same description as contained in the advertisement, to the purchasers, O'Fallon and Lindell.

On the 7th June, 1845, Louis Clamorgan, Henry Clamorgan, and Cyprian Clamorgan, (the latter acting by his guardian,) claiming to be the heirs and legal representatives of Jacques Clamorgan, deceased, filed their motion to set aside the sale to O'Fallon and Lindell for the following reasons:—

1st. Because the alias *fi. fa.*, by virtue of which the sale was made, was irregular and void, and had been improvidently issued, the whole amount of debt, damages, interest and costs, having been collected on the first execution.

2d. Because the said alias *fi. fa.* was not in fact levied on the land prior to the sale.

3d. Because the said premises, for many years prior thereto, and at the time of said sale, were divided and laid out into blocks, squares and town lots, visibly divided by streets and alleys, and other marked boundaries, then plainly visible and well known, as well to the sheriff as to O'Fallon and Lindell; that the property was susceptible of a division, and a good part thereof had before then been added to the city of St. Louis, as an addition thereto, by one Jeremiah Conner, and dedicated as such, all of which was known to the sheriff, O'Fallon and Lindell; that the sheriff did not sell or offer to sell it in parcels; but sold the same *in solido*, by reason of which the premises sold for much less than they would otherwise have done.

4th. Because the sheriff sold the premises for more than was due and unpaid upon said *fi. fa.*, the whole amount of which, including debt, damages, interest, and cost, was $5 42, less than the amount for which it sold, as appears by the sheriff's return.

5th. Because the description of the premises, as contained in the advertisement and deed, is vague, uncertain and void.

6th. Because the sheriff, in the advertisement and deed, falsely descri-bed the premises as the same acquired by said Clamorgan of Gabriel Dodier, by deed dated 4th November, 1793, whereas in fact no such deed ever existed.

7th. Because the sheriff, in his advertisement, falsely described the premises as bounded east by a fence, &c., west by the king's domain or vacant land, and south by the road to St. Charles, whereas no such fence did then exist, nor had existed for many years, and it was not bounded west by the king's domain, nor south by the road to St. Charles; that said description was throughout false, vague, and uncertain, as was well known, as well to the sheriff, as to O'Fallon and Lindell.

8th. Because between the land of Tayon, on the north, and the St. Charles road, on the south, there was in fact embraced two arpens by forty, whereas the sheriff in his advertisement and deed professed to sell only one by forty, leaving it entirely uncertain which of the two he in-tended to sell.

9th. Because the said sale was collusive, fraudulent and void.

The first and last reasons were subsequently withdrawn by the plaintiffs.

Notice of the motion was duly served upon O'Fallon and Lindell, the purchasers; but on no other persons. The motion was supported by the affidavits of Louis Clamorgan and Charles Collins, filed concurrently with the motion. The affidavits state in substance, that Jacques Cla-morgan died in 1814, having made and published his last will and testament, by which he divided his estate into five parcels or shares, one of which he devised to his son St. Eutrope, one to his son Cyprian Mar-tial, one to his daughter Apauline, and two to his son Maximin; that at the time of his death he was the owner, in fee simple of a certain tract of land in St. Louis county, containing one arpen in front by forty arpens in depth, the same which formerly belonged to Gabriel Dodier, by whom it was conveyed to a mulattress, named Esther, by deed dated 4th Nov., 1793, and by said Esther conveyed to said Clamorgan, by deed dated 2d Sept., 1794, and afterwards in 1811, confirmed to Clamorgan by the board of commissioners, and ratified by a subsequent act of congress; that at the time of his death Clamorgan left only the four children above named; that St. Eutrope was born on or about 27th November, 1799; Apauline about the month of April, 1803; Cyprian Martial in the same year, and Maximin in 1807; that St. Eutrope died intestate and without issue in 1825; that Maximin died intestate, without issue, and unmarried, about 7th June, 1825; that Cyprian Martial died 29th February, 1827, having made and published his last will and testament, by which he

devised to his sister Apauline, and her three children, Louis, Henry, and Louisa, and to the survivor of them all, his estate, except a few specific legacies to other persons; that Apauline died about 1st May, 1830, leav-·ing four infant children, Louis, Henry, Louisa, and Cyprian; that Louis was born 31st July, 1820; Henry, 21st July, 1822; Louisa at some period between 1823 and 1830; and Cyprian born a few weeks prior to the death of his mother; that Louisa died 18th August, 1834, unmarried, in-testate, and without issue; that the said Apauline about 11th April, 1830, a few weeks before her death, and before the birth of Cyprian, made and published her last will and testament, by which after a few specific lega-cies of small amount, she devised to her two children, Louis and Louisa, and to any other children thereafter to be born to her, and to the survivor of them, all her estate; that these several wills have all been duly proven, and admitted to record, copies of which are exhibited with the affidavits; the affidavits then recite the facts embodied in the motion in reference to the sale to O'Fallon and Lindell; it was admitted on the trial of the motion that a portion of the tract sold to O'Fallon and Lindell, has since been sold and conveyed by them in several parcels to various individuals, who are now in possession, claiming title under the sheriff's deed; but that a valuable portion of the tract yet remains in possession of Lindell by virtue of his purchase at the sheriff's sale; also that no other persons than O'Fallon and Lindell were notified of this motion. Upon this ad-mission of facts, on the calling of the motion for trial, the plaintiffs in the motion offered to prove all the facts stated in the motion and affida-vits; but the defendants O'Fallon and Lindell moved the Court to dismiss the motion on the face of it, and on the facts admitted, on the ground that the parties interested had not been notified, and that if all the facts stated in the motion and affidavit were true, the motion was not main-tainable; the Court thereupon dismissed the motion, and the plaintiffs in motion have brought the case to this Court by appeal, and assign for error, the action of the Court in dismissing the motion.

The only point decided by the Circuit Court in this case, was that all the parties interested had not been notified of the motion, and therefore it was not maintainable—and the propriety of this opinion is the only question for our determination.

The argument from which the plaintiffs draw their right to dispense with a notice to the present claimants of the property, is chiefly the ar-gument *ab inconvenienti.* This is a very good argument where a question may be decided either way, without interfering with any settled principle of law or equity. And if the proposition assumed in the argument, that

the rights of the purchasers of this property from O'Fallon and Lindell, would not be affected by the judgment on this motion, be a true one, it would certainly be a matter of no importance to them that they should have an opportunity to be heard. But can this assumption be correct? This is an application to set aside a sale made by the sheriff, at which O'Fallon and Lindell became the purchasers. If the sale be set aside and declared void, what becomes of the title to those who have purchased from O'Fallon and Lindell? If the title of O'Fallon and Lindell be destroyed, of what value will be the title of those who hold under and derive all their right from O'Fallon and Lindell? Will not the purchasers be considered as privy to this judgment, and would it not be as legitimate evidence against them as it would be against O'Fallon and Lindell? If the judgment will not affect the present holders of the lots, it would affect nobody, and for this reason alone, the Circuit Court should decline to pass upon the motion. A Court is not bound to decide moot points of law, or to proceed with any case, until the proper parties are before it, whose interests its judgments are designed to affect.

Judge Scott concurring, the judgment is affirmed.